**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                                        *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLLIAM HOWELL,** | : | **Civil Action No.** |
| **1547 E Palmer Street** | : | |
| **Philadelphia, PA 19125** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **SOUTHEASTERN PENNSYLVANIA** | : | |
| **TRANSPORTATION AUTHORITY,** | : | |
| **1234 Market Street** | : | |
| **Philadelphia, PA 19107** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, William Howell (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Southeastern Pennsylvania Transportation Authority (hereinafter "SEPTA" or "Defendant"), for violations of the Americans with Disabilities Act of 1990 ("ADA"), as amended, and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, SEPTA is a regional transportation authority with a location

at 1234 Market Street, Philadelphia, PA 19107.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original

2

jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under the ADA and the PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination against Defendant.

14. The Charge was assigned Charge Numbers of 530-2022-03965 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated May 8, 2023. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. On or around December 13, 1990, Defendant hired Plaintiff.

21. Throughout the course of Plaintiff's employment with Defendant, Plaintiff maintained an exemplary disciplinary record and performed his job duties well.

22. In or around 2002, Defendant promoted Plaintiff to the role of Transportation Manager, a position for which he was professionally qualified and subsequently held for nearly twenty (20) years.

23. By way of background, Defendant required employees to submit to random drug testing and Defendant had historically tested Plaintiff every year.

24. In connection therewith, Plaintiff complied with Defendant's testing requirement and successfully passed each test during his lengthy tenure of employment.

25. On or around May 26, 2021, Defendant directed Plaintiff to provide a urine sample for purposes of a random drug test.

26. Despite his best efforts, Plaintiff was unable to urinate within the three (3) hour period set forth in Defendant's Drug Free Workplace policy.

27. However, Plaintiff did in fact provide a urine sample just twenty (20) minutes after the conclusion of said period and additionally provided a blood sample.

28. Notwithstanding same, Defendant declined to analyze the samples Plaintiff provided.

29. Thereafter, Defendant did not advise Plaintiff of any consequences resulting from his inability to provide a sample and returned him to his job duties for approximately two (2) weeks.

30. On or around June 1, 2021, Defendant ordered Plaintiff to submit to a medical evaluation conducted by Defendant's physician.

31. Importantly, said perfunctory examination lasted no more than fifteen (15) minutes and did not provide the physician and the requisite information to diagnose Plaintiff's inability to provide a urine sample.

32. As a result of the inadequate evaluation, the physician determined that there was no valid medical reason for his failure to provide a sample in a timely manner.

33. In addition, Defendant did not inform Plaintiff of his right to seek an independent medical examination that would inevitably have been more thorough.

34. On or around June 4, 2021, Defendant suspended Plaintiff's employment based on his alleged "refusal" to submit to the random drug test.

35. As a result, as dictated by the Defendant's policy, a Medical Review Officer ("MRO") assumed responsibility for deciding whether Plaintiff had a valid medical explanation or his employment should be terminated.

36. On or around June 9, 2021, Plaintiff provided Defendant with documentation from his personal physician explaining that Plaintiff suffers from Hypertension and the medication prescribed as treatment would impact his ability to urinate as required.

37. By way of further information, Hypertension constitutes a disability as defined by the Americans with Disabilities Act in that it substantially limits one or more of Plaintiff's major bodily functions, including, but not limited to, functioning of the circulatory system.

38. Despite becoming aware of his disability and valid medical explanation for his failure to comply with the drug testing requirements, Defendant failed to engage in the interactive process with Plaintiff and refused to consider any accommodation.

39. Furthermore, Defendant did not provide Plaintiff's report to the MRO and the MRO failed to conduct his own examination of Plaintiff or even contact him to gather any medically relevant information.

40. Unsurprisingly, as a result of the utter failure to engage in the interactive process, the MRO found that Plaintiff did not have a sufficient explanation for his inability to provide a urine sample.

41. Thereafter, Plaintiff filed a union grievance contesting the decision, but on or around July 14, 2021, Defendant upheld the termination decision.

42. In accordance with the grievance procedure, the matter next proceeded to an arbitration hearing in or around January 2022, which ultimately led to the parties reaching an agreement that Defendant would reinstate Plaintiff.

43. However, Defendant conditioned Plaintiff's reinstatement on his passing a drug test and then again failed to accommodate Plaintiff with any alteration to the method of testing.

44. In fact, on or around February 8, 2022, Defendant provided Plaintiff with only a few minutes to provide a sample and again he was unable to urinate under those circumstances.

45. Based on his alleged "refusal" to submit to a drug test, Defendant denied Plaintiff's reinstatement.

46. Again, Plaintiff did provide blood and late urine samples, yet SEPTA failed to analyze them.

47. In addition, Plaintiff immediately visited his physician who conducted a urine drug test, and later submitted to a hair follicle test, both of which came back negative.

48. Significantly, Plaintiff's physician diagnosed him with Paruresis, an anxiety disorder and social phobia which prevents him for urinating on demand under the conditions required in a random drug test.

49. Paruresis constitutes a disability as defined by the Americans with Disability Act in that it substantially limits one or more of Plaintiff's major bodily functions, including, but not limited to, bladder and brain functions, and functions of the neurological and genitourinary systems.

50. Hence, Plaintiff's failure to provide a urine sample is not a refusal, but simply a psychological and physical impossibility, and a disability that is entitled to accommodation.

51. On or around February 11, 2022, Plaintiff notified Defendant of his diagnosis and requested that Defendant accommodate his disability by providing him extra time in order to provide a sample for the drug test.

52. Defendant could have provided the requested accommodation to Plaintiff without any undue burden.

53. Despite Plaintiff's request for an accommodation in the reinstatement process, Defendant failed to engage in the interactive process and flatly denied his request.

54. In further support of his request, Plaintiff sought the evaluation of two (2) Urologists who confirmed the diagnosis of Paruresis and additionally diagnosed him with Prostatic Enlargement.

55. Although Plaintiff has made Defendant aware of same, Defendant has not made any alternative arrangements for drug testing to accommodate Plaintiff's disability.

56. Inasmuch as the Defendant's policy fails to allow for alternative drug testing methods, it is in violation of the ADA.

57. It is Plaintiff's position that he was discriminated against due to his disabilities and denied a reasonable accommodation in violation of the ADA and the PHRA.

## COUNT I – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

58. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

59. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

60. Plaintiff was qualified to perform the job.

61. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

62. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

63. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

64. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

65. The purported reason for Defendant's decision is pretextual.

66. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

67. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

68. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

69. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

70. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

71. Plaintiff was qualified to perform the job.

72. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

73. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

74. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

75. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

76. The purported reason for Defendant's decision is pretextual.

77. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

78. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

79. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered

damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, William Howell, requests that the Court grant him the following

relief against Defendant:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Liquidated damages;

(d)     Emotional pain and suffering;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest;

(h)     An allowance to compensate for negative tax consequences;

(i)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA and the PHRA.

(j)     Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in,  training  programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and

65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy

is not the subject of any other action pending in any court or of a pending arbitration proceeding,

nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

**KOLLER LAW, LLC**

Date: August 4, 2023    **By:** */s/ David M. Koller*

David M. Koller, Esquire (90119)
Jordan D. Santo, Esquire (320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

11